MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@hpl.law
ELODIE BARDON (SBN: 352856)
E-Mail: Elodie@hpl.law
**HANKIN PATENT LAW,**
A Professional Corporation
11414 Thurston Circle
Los Angeles, CA 90049
Tel: (310) 979-3600

Attorneys for PLAINTIFF,
**MMAS RESEARCH LLC**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>Plaintiff<br><br>v.<br><br>Novartis Pharma GmbH; Albert Einstein College of Medicine; University of Naples Federico II; St. Olavs Hospital; Yale University; Morisky Medication Adherence Research LLC; Cardinale Giovanni Panico General Hospital; Universita di Pavia; Maastricht University Medical Center; DOES 1 through 10, inclusive,<br><br>Defendants. | CASE No. 2:25-cv-07439<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Breach of Contract<br>2. 17 U.S.C. § 501 – Infringement of Copyright<br>3. Misappropriation of Trade Secrets under the Defend Trade Secrets Act (DTSA) and State Law<br>4. Tortious Interference with Contractual Relations and Business Expectancy<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff MMAS RESEARCH LLC ("MMAS Research," or "Plaintiff") for its claims for relief against Defendants Novartis Pharma GmbH ("NOVARTIS"); Albert Einstein College of Medicine ("EINSTEIN"); University of Naples Federico II ("FEDERICO"); St. Olavs Hospital ("OLAV"); Yale University ("YALE"); Morisky Medication Adherence Research LLC ("MMAR"); Cardinale Giovanni Panico General Hospital ("PANICO"); Università di Pavia ("PAVIA"); Maastricht University Medical Center ("MAASTRICHT"); and DOES 1 through 10, inclusive ("DOES") (collectively herein "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises, in part, under the 17 U.S.C. § 501 – Infringement of Copyright, including all sections created or amended by the Digital Millennium Copyright Act conferring federal question jurisdiction under 17 U.S.C. § 101, *et seq.*, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2.      This action arises, in part, under the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836, conferring federal question jurisdiction.

3.      Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and there is a complete diversity of citizenship between the Parties.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because: (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have, had, or will have had effect in this District; (c) the written agreements identified and described more thoroughly below were entered into by the Parties in this District; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

5.      Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more Defendants are amenable to personal jurisdiction in this District.

## THE PARTIES

6.　　Plaintiff, MMAS RESEARCH LLC (MMAS) is a Washington limited liability company in good standing.

7.　　Steven Trubow (Trubow) is the CEO of MMAS.

8.　　Plaintiff is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright").

9.　　On information and belief, Defendant Novartis Pharma GmbH (NOVARTIS) is located at Roonstraße 25, 90429 Nürnberg, Germany.

10.　　On information and belief, Defendant Albert Einstein College of Medicine (EINSTEIN) is located at 1300 Morris Park Ave, Bronx, NY 10461.

11.　　On information and belief, Defendant University of Naples Federico II (FEDERICO) is located at Corso Umberto I, 40, 80138 Napoli NA, Italy.

12.　　On information and belief, Defendant St. Olavs Hospital (OLAV) is located at Prinsesse Kristinas gate 3, 7030 Trondheim, Norway.

13.　　On information and belief, Defendant Yale University (YALE) is located at 2 Whitney Ave., 480, P.O. Box 208255, New Haven, CT 06520-8255.

14.　　On information and belief, Defendant Morisky Medication Adherence Research (MMAR) is located at 130 Granada Ave, Long Beach, CA 90803-3251.

15.　　On information and belief, Defendant Cardinale Giovanni Panico General Hospital (PANICO) is located at Via San Pio X, 4, 73039 Tricase LE, Italy.

16.　　On information and belief, Defendant Università di Pavia (PAVIA) is located at Corso Strada Nuova, 65, 27100 Pavia, Italy and Campus della Salute, presso Policlinico San Matteo, Viale Golgi 19, 27100 Pavia, Italy.

17.　　On information and belief, Defendant Maastricht University Medical Center (MAASTRICHT) is located at P. Debyelaan 25, 6229 HX Maastricht, Netherlands.

18.　　Plaintiff is informed and believes and thereon alleges that Defendants

- 3 -
COMPLAINT FOR DAMAGES

DOES 1 through 10, inclusive (the "Doe Defendants," and collectively with the above-named defendants, the "Defendants"), are other parties not yet identified and are the subject of this lawsuit. The true names, whether corporate, individual, or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues Defendants by such fictitious names, and will seek leave to further amend this complaint to show their true names and capacities when their identities have been determined.

19.    Plaintiff is informed, believes, and thereupon alleges that Doe Defendants were, and are, in some manner responsible for the actions, acts, and omissions alleged, and for the damage caused by Defendants and are, therefore, liable for the damage caused to Plaintiff.

20.    Plaintiff is informed, believes, and thereon alleges that Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damage to Plaintiff.

21.    Plaintiff is informed, believes, and thereon alleges that, at all relevant times, Defendants controlled and participated in the acts alleged herein.

## FACTS RELEVANT TO ALL ALLEGATIONS

22.    The Ninth Circuit Court of Appeals issued a memorandum on March 13, 2024, in case No. 23-55202 confirming that MMAS Research owns the Copyright to the Morisky Widget, stating:

> "The district court erred in concluding that MMAS lacked standing to sue for copyright infringement. The district court found that a 2020 preliminary settlement agreement (CR2A) from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky Widget from MMAS to Dr. Morisky. But that agreement—which simply outlined terms MMAS and Dr. Morisky "desire[d] to consent and agree to" sometime in the future—was never finalized. thus, it never transferred its copyright and remains the registered owner of the Morisky Widget. Similarly, because the agreement was a private

contract between Dr. Morisky and MMAS, and because it was never finalized, it was not an abandonment of MMAS's right to sue Charité for copyright infringement."

23.　To protect the integrity of the Morisky Widget and protect against counterfeiting, infringing, or unauthorized use, Plaintiff filed for and obtained a Certificate of Registration for the Morisky Widget from the United States Copyright Office.

24.　The Morisky Widget copyright, as alluded to above, includes the source code for the Morisky Widget, which itself includes the Morisky Widget diagnostic assessments, MMAS-4, MMAS-8.

25.　Plaintiff has complied in all respects with the Copyright Act and Digital Millennium Copyright Act, as well as all other laws governing copyrights, as to the Morisky Widget copyright.

26.　Plaintiff has been, and still is, the author and exclusive holder of all rights, title, and interest in, and to, the copyrights to the Morisky Widget.

27.　On information and belief, the 2006 and 2007 copyright MMAS-8 and MMAS-4 and the 2017 Morisky Widget copyright MMAS-8 and MMAS-4 have drastically different sensitivity and specificity.

28.　On information and belief, research studies show the 2006 MMAS-8 has lower true positive sensitivity (73%) as compared to 2017 Morisky Widget MMAS-8. (93%). https://pmc.ncbi.nlm.nih.gov/articles/PMC7474121/

29.　On information and belief, out of 100 patients taking a 2006 MMAS-8 test, 73% or 73 patients were correctly identified as adherent or non-adherent to their medication, while 100 patients taking a 207 Morisky Widget MMAS-8 test, 93% or 93 patients were correctly identified as adherent or non-adherent to their medication.

30.　On information and belief, each 2006 MMAS-8 and MMAS-4 test provides **a single score of raw medication adherence only**.

31.　On information and belief, each 2017 Morisky Widget MMAS-8 and

MMAS-4 test **provides 3 quantitative scores, raw medication adherence, intentional non-adherence, and intentional non-adherence**.

32.    On information and belief, while the traditional MMAS=8 and MMAS-4 tests **have sensitivity, true positives of 73% and 68% respectively, the Morisky Widget MMAS-8 and MMAS-4 tests have sensitivity, true positives of 93% respectively**.

33.    On information and belief, Plaintiff permits the use of the Morisky Widget, licensing its copyright and diagnostic assessments, only through a licensing program that includes training and certification on the use of the Morisky Widget MMAS-8 and MMAS-4.

34.    Plaintiff grants clinics, practitioners, and similar organizations, entities, and individuals limited-use perpetual licenses for the Morisky Widget that impose restrictions on the use and disclosure of the trade secret scoring and coding of the Morisky Widget MMAS 4/8 diagnostic assessments.

35.    All Morisky Widget licensees are required to score and code MMAS-4, and MMAS-8 tests in the Morisky Widget and to be trained and certified on the use of the Morisky Widget before administering it to patients.

36.    The MMAS-8 and MMAS-4 Widget medication and condition specific diagnostic assessments consist of a list of questions that distinguish between the underlying cause of non-adherence as being intentional or unintentional allocate numerical value for each. The MMAS-8 scores generated were based on intentional and unintentional non-adherence, to determine adherences based on intentional cause for not taking their medications or unintentional cause such as cognitive impairment, worries about the consequences of taking them, or loss of motivation to self-care.

### A.    NOVARTIS

37.    On February 24, 2017, Defendant NOVARTIS and Plaintiff, MMAS Research LLC executed a perpetual Morisky Widget MMAS-8 License.

38.    On or about June 8, 2017, Plaintiff traveled to Nuremburg Germany,

trained and certified NOVARTIS clinicians on the trade secret scoring and coding criteria of the Morisky Widget MMAS-8 tests.

39.    On information and belief, Defendant NOVARTIS fully understood and agreed The Morisky Widget License is for Novartis Pharma Worldwide and cannot be transferred outside of the Novartis Pharma. Any individual of Novartis Pharma is licensed to use the Morisky Widget and can purchase pre-paid MMAS tests. Under no circumstances can this MMAS license or pre-paid tests be transferred to another organization or individual outside of Novartis Pharma.

40.    On information and belief, Plaintiff agreed to make the MMAS-8 scoring and coding algorithm available on Defendants NOVARTIS instance of the Morisky Widget

41.    On information and belief, Defendant NOVARTIS agreed to pay Plaintiff a one- time $8500.00 fee with training and certification for a perpetual Morisky Widget Software License and $1800 for #1800 MMAS-8 German tests administered by paper and pencil for the NOFRETETE Study but scored and coded in the Morisky Widget.

42.    On information and belief, as of August 1, 2025, not a single NOFRETETE Study MMAS-8 test was scored and coded in the NOVARTIS instance of the Morisky Widget by the two NOVARTIS clinicians trained and certified by Plaintiff to use the Morisky Widget.

| Novartis Pharma GmbH | | 100 | | 0 | 0 |
|---|---|---|---|---|---|
| tamara.tesanovic | tamara.tesanovic@novartis.com | | 2017-05-31T19:58:55.756Z | | 0 |
| christian-1.roos | christian-1.roos@novartis.com | | 2017-09-05T01:37:15.463Z | | 0 |

43.    On information and belief, Defendant NOVARTIS fully understood and agreed that after the NOFRETETE Study 1800 MMAS-8 tests are administered by paper and pencil, Licensee will only use the Morisky Widget to electronically administer MMAS-8 tests. In case where there is no internet access, Licensee can use paper and pencil and enter the test data into the Morisky Widget later.

44.    On information and belief, Defendant NOVARTIS fully understood and agreed that in case of scientific, administrative, or intellectual property misconduct in using the Morisky Widget, the MMAS-4 and MMAS-8, Licensor reserves the right to

withdraw permission for use and to pursue all legal remedies.

45.     On information and belief, Defendant NOVARTIS reported on the ClinicalTrials.gov website on August 21, 2023, that the NOFRETETE Leukemia Study began on June 6, 2016, and was completed on September 8, 2022. https://clinicaltrials.gov/study/NCT05734053?term=novartis%20germany%20mmas-8&rank=3

46.     On information and belief, Defendant NOVARTIS reported on the ClinicalTrials.gov website that patient adherence was measured for at least 200 patients using the MMAS-8 (Morisky et al., 2008) patient questionnaire, without a single MMAS test scored and coded in the Morisky Widget.

47.     On information and belief, Defendant NOVARTIS reported on the ClinicalTrials.gov website on August 1, 2025, that the RIBANNA Breast Cancer study began on October 9, 2017, and was completed on February 16, 2025. https://clinicaltrials.gov/study/NCT06311383?term=novartis%20germany%20mmas-8&rank=1

48.     On information and belief, Defendant NOVARTIS reported that the MMAS-8 was administered to at least 2615 patients in the RIBANNA study, without a single MMAS-8 test scored and coded in the Morisky Widget.

49.     On information and belief, on August 1, 2025, Defendant NOVARTIS reported on the ClinicalTrials.gov website that the RIBANNA Breast Cancer study began on October 9, 2017, and was completed on February 16, 2025.

50.     On information and belief, on July 15, 2025, Defendant NOVARTIS reported on the ClinicalTrials.gov website that A Study to Investigate LDL-cholesterol Lowering With Inclisiran Compared to Bempedoic Acid in Patients With Atherosclerotic Cardiovascular Disease (Cardio Study) began on June 21, 2024, and was scheduled for completion on December 15, 2025. https://clinicaltrials.gov/study/NCT06431763?term=novartis%20germany%20mmas-8&rank=2

51.    On information and belief, Defendant NOVARTIS reported that the Cardio Study assessed adherence to lipid-lowering therapy over time in participants receiving Inclisiran compared to BPA on top of maximally tolerated HI statins (+/- Ezetimibe) using the Morisky 8-Item Medication Adherence Scale (MMAS-8). The Morisky Medication Adherence Scale is an assessment tool used to measure non-adherence in patient populations. It consists of seven yes/no questions and one 5-point Likert scale with a sum score ranging between 0 and 8 points. The higher score indicates higher adherence.

https://clinicaltrials.gov/study/NCT06431763?term=novartis%20germany%20mmas-8&rank=2

52.    On information and belief, Defendant NOVARTIS employee, Mirjam Metzner, the project director for the Cardio study wrote to Plaintiff on July 25, 2025. Metzner wrote, "May we ask you to please search your system for our license agreement. We are all covered. We have a MMAS license since last year for exactly this study."

53.    On information and belief, on January 8, 2018, Donald Morisky, the author of the 2006 MMAS-8 and the 2007 MMAS-4 and a collaborator on the 2017 Morisky Widget MMAS-8 and MMAS-4, wrote to the Gertner Institute to answer a request for a traditional MMAS-8 license. Morisky wrote, "**All data collection of the MMAS adherence scales must use the Morisky Widget […]. All MMAS-8 and MMAS-4 licenses are administered through the Morisky Widget pictured above. Another HUGE ADVANTAGE of the Morisky Widget is the option to select from 110 MMAS-8 condition-specific tests […] which offer a sensitivity of 93% as compared to the generic MMAS-8 at 83% sensitivity**."

54.    On information and belief, in 2022, Dr. Michael Ortiz wrote an editorial to Wiley's Journal of Clinical Hypertension, the publisher of the 2008 MMAS-8 validation article. Dr. Ortiz concluded his editorial with the statement, "**the MMAS-8 scores may be no more accurate in detecting patients with uncontrolled BP, than tossing a coin**

**to decide.**"

https://pmc.ncbi.nlm.nih.gov/articles/PMC9581089/

55.    On information and belief, in an August 2023 notification from the Editor of the Journal of Clinical Hypertension, the Editor wrote, "Following an investigation by the Journal, which included an independent statistical review, it was concluded that the results of the article were misleading due to issues regarding the **sensitivity and specificity of the medical adherence scale [MMAS-8] used**. As a result, the Journal no longer has confidence in the reported conclusions and has **retracted the article**."

https://pmc.ncbi.nlm.nih.gov/articles/PMC10546958/

56.    On information and belief, when Donald Morisky and Plaintiff perpetually licensed the Morisky Widget MMAS-8/4 to Novartis Germany, Novartis Italy, Novartis France, Novartis Argentina, Novartis UK and Novartis South Korea, it was to guarantee that the MMAS-8 medication adherence scale provided for Novartis' clinical trials would have the highest sensitivity and specificity to insure both the validity of the trials, studies and protect patients from adverse medical events as a result of a misdiagnosis of medication adherence.

57.    On information and belief, Defendant MMAR tortiously interfered with the perpetual Novartis Morisky Widget licenses for Novartis Germany, Novartis Italy, Novartis South Korea, and Novartis Argentina, by threatening to sue NOVARTIS for copyright infringement for using the Morisky Widget. MMAR. The threats led to the termination of many perpetual Novartis Morisky Widget licenses and the relicensing of Novartis with MMAR 2006 MMAS-8 licenses.

58.    On December 6, 2020, , Defendant MMAR and Plaintiff executed the CR2A settlement agreement. In CR2A, Section 2, 7, MMAR agreed to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect, including adhering to all European Union Privacy regulations (including but not limited to GDPR and HIPPA).

59.    On information and belief, Novartis Pharma GmbH, Novartis South Korea,

Novartis UK, and OPIS Novartis Italy were listed on page 31 of the CR2A as Morisky Widget licenses prior to the execution of the CR2A.

60.    On June 15, 2021, Plaintiff and Donald Morisky executed an Addendum with Novartis Argentina to the Novartis Pharma GmbH Germany Morisky Widget License made on June 12, 2017.

61.    On information and belief, in the Addendum, Plaintiff, Donald Morisky and Novartis Argentina agreed to re-score and re-code approximately 800 MMAS-8 tests in the Morisky Widget as specified in Defendant Novartis Germany's Morisky Widget license.

62.    On information and belief, Plaintiff and Donald Morisky received payments of approximately $7000.00 each for the execution of the Addendum to the Novartis Germany Morisky Widget license.

63.    On November 22, 2022, Plaintiff and Novartis Argentina signed an Amendment to the Addendum to the Novartis Germany Morisky Widget license in order to execute the terms of the 2021 Addendum without interference from Donald Morisky or Defendant MMAR LLC.

64.    On information and belief, in the Amendment, Plaintiff  indemnifies, defends, and holds NOVARTIS harmless and each of its officers, employees, representatives, agents, contractors, successors and assigns against all losses, damages, liabilities, charges, judgements, costs and expenses arising out of or in connection with any claim of any third party, including but not limited to Mr. Donald Morisky, for infringement of their intellectual property rights or any other right arising from or connected with the Agreement and/or the performance of this Amendment.

65.    On information and belief, on March 14, 2022, Donald Morisky, the President of MMAR LLC and Professor at the UCLA Fielding School of Public Health wrote to Novartis South Korea, a perpetual Morisky Widget licensee since November 2017.  Morisky wrote, "I had also revoked Mr. Trubow's authority to issue new licenses for my copyrighted MMAS 4 and 8 scales and informed him early on last year that the

Morisky Widget will be phased out completely after September 2021. All Morisky Widget licensees are being notified of this legal change. I have formed my own company, MMAR LLC, and is the SOLE OWNER/LICENSOR OF MMAS."

66.     On May 1, 2022, Novartis Korea Ltd and Plaintiff executed an Addendum to the November 2017, Novartis Korea perpetual Morisky Widget license. In the Addendum, Plaintiff represented and warranted that Plaintiff is the rightful owner of all IP rights in relation to the Morisky Widget. In addition, Plaintiff was obligated in the Addendum to indemnify and hold Novartis Korea harmless from and against any and all claims, losses and damages Novartis Korea may suffer due to any type of claims raised by Donald Morisky or MMAR LLC in connection with the Novartis Korea Morisky Widget MMAS License.

67.     On information and belief, after the execution of the Addendum, Novartis Korea Ltd removed the Morisky Widget MMAS-8 from a study, Novartis conducted for the South Korea government and ceased all communications with Plaintiff.

68.     On information and belief on July 29, 2022, the OPIS clinical research organization on behalf of Novartis Farma S.p.A, (Italy) terminated it perpetual Morisky Widget license and requested a refund.

69.     On information and belief, the CEO of OPIS wrote, "Over past few months we learned via Donald Morisky website (Predatory Pricing from Steve Trubow (moriskyscale.com)) that you do not have any rights to use the Widget and that Donald Morisky has sued you for copyright and trademark infringement (these circumstances were directly confirmed by Donald Morisky).

70.     On information and belief, in May 2023, OPIS/Novartis Italy reached a settlement to resume the use of the Morisky Widget in the ROMEI Breast Cancer study. In the settlement agreement and addendum to the Novartis Italy Morisky Widget license, Novartis Italy wrote, "A letter dated April 21st, 2022 from the legal counsel of Dr. Donald Morisky, former business partner of Mr. Steven Trubow, was published online via Donald Morisky's website ("*Predatory Pricing from Steve Trubow*"),

warning the users of the Morisky Widget that Mr. Morisky had filed an action against MMAS and Mr. Trubow, alleging that both of them had violated Donald Morisky's intellectual property rights over the Morisky Widget. The letter, in particular, highlighted that "*ANY PERSON THAT USES OR LICENSES THE MORISKY WIDGET, MMAS-4 SCALE OR MMAS-8 SCALE WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR. MORISKY WILL BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW FOR COPYRIGHT INFRINGEMENT.*" A true and correct copy of the Settlement Agreement between OPIS (on behalf of Novartis Farma S.p.A.) and MMAS Research LLC is attached as Exhibit 1.

### B. FEDERICO

71. On April 14, 2019, University of Naples Federico II and MMAS Research LLC executed a perpetual Morisky Widget MMAS Retroactive and Corrective License .

72. On or about June 21, 2019, Plaintiff traveled to Naples Italy, and trained and certified FEDERICO clinicians on the trade secret scoring and coding criteria of the Morisky Widget MMAS tests.



73. On information and belief, FEDERICO fully understood and agreed that they were prohibited from administering any MMAS paper questionnaires. Licensee may only administer MMAS™ tests with the Morisky Widget, the Morisky Kiosk I-Phone App. or the MABU Robotic or through a Licensor approved third-party electronic questionnaire, via the Morisky Widget Application Programming Interface ("API"), but all MMAS tests must be scored, coded, and reported without exception, through the Morisky Widget. only as described in this agreement.

74.    On information and belief, as of July 18, 2025, FEDERICO trained and certified clinicians score only 38 MMAS tests in the Morisky Widget.

| Federico II University | | 3000 | 1 | 38 |
|---|---|---|---|---|
| strubow_federico2 | trubow1+federico2@gmail.com | 2019-06-17T01:13:38.830Z | | 0 |
| rosario23 | ferrignoro@gmail.com | 2019-06-21T12:42:53.174Z | | 3 |
| chiara85 | simeolichiara@gmail.com | 2019-06-21T12:43:42.733Z | | 6 |
| enrico27 | enr.riccio@gmail.com | 2019-06-21T12:44:54.831Z | | 4 |
| Fortuna91 | fortunapapa91@gmail.com | 2019-06-21T12:45:34.600Z | | 4 |
| grasso84 | ludovicagrasso@hotmail.com | 2019-06-21T12:46:30.728Z | | 3 |
| domenico93 | dom.angellotti@gmail.com | 2019-06-21T12:46:57.629Z | | 5 |
| renataauriemma | renatasimona.auriemma@unina.it | 2019-06-21T12:47:08.727Z | | 4 |
| bottiglieri88 | lenabottiglieri@gmail.com | 2019-06-21T12:47:28.563Z | | 4 |
| roberta84 | robertamodica@libero.it | 2019-06-21T12:47:30.562Z | | 4 |
| francescogarifalos | francesco.garifalos@gmail.com | 2019-06-21T12:47:53.499Z | | 4 |

## C.    ALBERT EINSTEIN COLLEGE OF MEDICINE

75.    On April 21, 2017, the Montefiore Medical Center, the Albert Einstein College of Medicine, and Yeshiva University ("Licensees") and Plaintiff executed a perpetual Morisky Widget MMAS License.

76.    On or about December 6, 2017, traveled to Bronx, NY to train and certified EINSTEIN clinicians on the trade secret scoring and coding criteria of the Morisky Widget MMAS tests.



77.    On information and belief, EINSTEIN fully understood and agreed that their Morisky Widget license is non-transferable outside of the Albert Einstein College of Medicine, and the Morisky Widget can only be used by EINSTEIN faculty or students with proper Morisky Widget training.

## D.    YALE UNIVERSITY

78.    On February 25, 2016, Defendant Yale University and MMAS Research LLC executed a MMAS-8 license.

79.    On information and belief, Defendant YALE agreed and understood that coding and scoring criteria of MMAS-8 are trade secrets of the Owner and as such cannot be divulged in any publication or report without the Owner's prior written permission.

80.    On information and belief, Defendant YALE agreed and understood that in case of scientific, administrative or intellectual property misconduct, Licensee agrees to the jurisdiction in and venue of the State and Federal Courts in Los Angeles County.

81.    On information and belief, on March 17, 2025, Defendants FEDERICO, YALE and EINSTEIN, published an article, entitled, "Subclinical left ventricular dysfunction assessed by global longitudinal strain correlates with mild cognitive impairment in hypertensive patients."

https://www.nature.com/articles/s41440-025-02182-3

82.    On information and belief, Defendants FEDERICO and EINSTEIN used the Morisky Medication Adherence Scale in breach of their respective Morisky Widget license.

83.    On information and belief, Defendant EINSTEIN's author of the article, Pasquale Mone, was never trained and certified on the Morisky Widget.

84.    On information and belief, Defendant FEDERICO, author of the article, Guido Iaccarino was never trained and certified on the Morisky Widget.

### E.  ST. OLAV UNIVERSITY HOSPITAL

85.    On June 28, 2018, St. Olavs University Hospital and Plaintiff executed a perpetual Morisky Widget license.

86.    On information and belief, Defendant OLAV understood and agreed that MMAS CODING & SCORING criteria are trade secrets of Plaintiff and as such can NEVER be divulged in any publication, presentation, or website without written permission from Plaintiff.

87.    On information and belief, Defendant OLAV published an article entitled the Role of Perceived Social Support in Adherence to Antihypertensives and Controlled

Hypertension: Findings of a Community Survey from Urban Nepal.

https://pmc.ncbi.nlm.nih.gov/articles/PMC10981373/

88.    On information and belief, Defendant OLAV wrote in the article, "We administered an eight-item Morisky Medication Adherence Scale (MMAS-8) (Supplementary Table 1).[33] The scale is widely used to measure medication adherence and is reported to have good reliability ($\alpha$ = 0.83) and validity with sensitivity of 93% and specificity of 53% for low adherence.[34] **The first seven questions have responses YES coded as 0 and NO coded as 1. The code of the fifth question was reversed and the responses to the eighth question were re-coded from 2 to 0.75, 3 to 0.5, 4 to 0.25, 5 to 0 during the analysis. Responses to all eight questions were added to get MMAS, and a score above 6 was considered good adherence and $\leq$6 poor adherence**."

https://pmc.ncbi.nlm.nih.gov/articles/PMC10981373/

89.    On information and belief, Defendant OLAV acknowledged in the article The MMAS-8 Scale, content, name, and trademarks are protected by US copyright and trademark laws. Permission for use of the scale and its coding is required. A license agreement is available from MMAR, LLC.: www.moriskyscale.com

90.    On information and belief, Defendant MMAR LLC and Plaintiff signed the CR2A Agreement on December 4, 2020.

91.    On information and belief from September 2019 until December 2020, MMAS Research LLC, Trubow, Morisky and MMAR LLC were engaged in litigation in Washington State and Nevada.  This litigation entailed allegations concerning ownership of the Morisky Widget and licensing which was addressed in a December 2020 "CR2A" settlement agreement signed by MMAR LLC, and MMAS Research LLC.

92.    Plaintiff is informed, believes, and thereupon alleges that Defendants MMAR LLC did not honor commitments in the CR2A.

93.    On information and belief, Defendants MMAR breached Section II #7 of

the CR2A by failing to provide full access to the Morisky Widget and support as needed to licensees, Defendant OLAV who was listed on CR2A pages 32 as perpetual Morisky Widget licenses prior to the execution of the CR2A.

### F.    PANICO

94.    On information and belief, Defendant Cardinale Giovanni Panico General Hospital (PANICO) published a study on May 15, 2025, that misappropriated MMAS-8 trade secrets. The article is entitled **EFFICACY OF AN EDUCATIONAL STRUCTURED PROGRAM GUIDED BY A NURSING TEAM ON THERAPY ADHERENCE AND CLINICAL OUTCOMES IN PATIENTS WITH HEART FAILURE**.

https://academic.oup.com/eurheartjsupp/article-abstract/27/Supplement_5/suaf076.274/8132763

95.    On information and belief, Defendant PANICO wrote in the article, "The questionnaire (MMAS–8 score) included 8 questions (**Table 1B**); adequate adherence was identified with a score ›8 points, moderate adherence with a score >6 and <8 points, and poor adherence with a score ‹6 points. All patients were re–evaluated after 4 months, both clinically and again with the adherence questionnaire, evaluating the possible benefit in the observation period. In the article Defendant PANICO divulged trade secret MMAS-8 scoring and coding criteria as shown in Exhibit 1."

96.    On information and belief, Defendant PANICO used the MMAS-8 Italian Translation without license training and certification to administer, score, code 86 MMAS-8 tests for heart failure patients.

97.    On information and belief, Defendant PANICO infringed on the MMAS-8 copyright by using an unauthorized foreign translation of the MMAS-8

98.    On information and belief, Defendant PANICO created a MMAS-8 derivative work infringing on the Plaintiff MMAS-8 copyright. A true and correct copy of the article is attached as Exhibit 2.

99.    On information and belief, in the article Defendant PANICO divulged

trade secret MMAS-8 scoring and coding criteria as shown in Exhibit 2.

### G. PAVIA

100.    On information and belief, Defendant PAVIA published a study on August 31, 2022, that misappropriated MMAS-8 trade secrets. The article is entitled **Asthma control in adolescents: the importance of assessing adherence**.

https://pubmed.ncbi.nlm.nih.gov/36043978/

101.    On information and belief, Defendant PAVIA's study was published without license or permission from the MMAS-8 copyright holder. The PAVIA study investigator did not have the required training and certification on the MMAS-8 to correctly use assessment on the 87 adolescent patients.

102.    On information and belief, Defendant PAVIA based their use of the MMAS-8 on the retraced MMAS-8 validation article, Morisky DE, Ang A, Krousel-Wood M, Ward HJ. Predictive validity of a medication adherence measure in an outpatient setting. J Clin Hypertens (Greenwich) 2008; [Retracted]

103.    On information and belief, Defendant PAVIA used an unauthorized Italian translation of the MMAS-8.

104.    On information and belief, Defendant PAVIA used scientifically incorrect MMAS-8 scoring and coding criteria to assess moderate medication non-adherence.

### H. MAASTRICHT

105.    On March 7, 2018, Defendant MAASTRICHT and Plaintiff executed a retroactive, corrective, and perpetual Morisky Widget License.

106.    On information and belief, Defendant MAASTRICHT agreed and understood that all psychometric products as well as their certified translations, adaptations, computer programs, software and scoring and coding algorithms, trade secrets, and any other related documents and information (including those in electronic form) which embody or are related to the Morisky Widget or MMAS tools (including without limitation the Morisky Medication Adherence Scale 4- and 8-item versions, Morisky Medication Adherence Protocol and any documentation thereof are the

intellectual property of the Plaintiff.

107. On information and belief, Defendant MAASTRICHT agreed and understood that they must submit to MMAS Research LLC all presentations and manuscripts that are being considered for abstracts/poster presentations or publication to make certain that all copyright and trademark requirements are included in all manuscripts submitted for publication

108. On information and belief, Defendant MAASTRICHT agreed and understood that Coding and scoring criteria of the MMAS are trade secrets of Licensor and as such can NEVER be divulged in any publication, presentation, or website, or disclosed to anyone without prior written permission from Plaintiff. If Licensee divulges MMAS scoring and coding criteria it will be considered a breach of the license.

109. On information and belief, Defendant MAASTRICHT published a study article in March 2022 entitled Long Term Adherence to Direct Oral Anticoagulants in Patients with Atrial Fibrillation.
https://pubmed.ncbi.nlm.nih.gov/35306490/

110. On information and belief, Defendant MAASTRICHT breached their Morisky Widget license by failing to submit the manuscript to Plaintiff before it was published.

111. On information and belief, Defendant MAASTRICHT divulged trade secret MMAS scoring and coding criteria in the 2022 article. Defendant MAASTRICHT wrote, "The first seven items are yes/no-responses and the last item is a 5-point Likert scale. This last item consists of a score between zero and one in 0.25-point increments on a 5-point scale assessing how frequent patients forgot to take medications (never = 1, once- in- a-while = 0.75, sometimes = 0.5, usually = 0.25, and all the time = 0)." https://pubmed.ncbi.nlm.nih.gov/35306490/

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (As to Defendants NOVARTIS, FEDERICO, EINSTEIN, OLAV, YALE, MAASTRICHT)

112.    MMAS Research realleges each allegation contained in the preceding paragraphs.

113.    This claim for relief for breach of contract is established by the prima facie elements of (1) existence of a valid contractual obligation, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages to plaintiff.

114.    A valid contractual obligation was established by the execution of a perpetual global Morisky Widget license agreement between Defendant NOVARTIS and Plaintiff MMAS Research LLC which permitted use of the Morisky Widget MMAS assessments under specific conditions. This license constitutes a binding contract under applicable law.

115.    Defendant NOVARTIS breached its perpetual Morisky Widget license by scoring and coding MMAS-8 tests outside of the Morisky Widget in the NOFRETETE, RIBANNA, and CARDIO studies.

116.    A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant FEDERICO and Plaintiff MMAS Research LLC which permitted use of the Morisky Widget MMAS assessments under specific conditions. This license constitutes a binding contract under applicable law.

117.    Defendant FEDERICO breached its Morisky Widget license by not scoring and coding MMAS tests through the Morisky Widget.

118.    Defendant FEDERICO breached its Morisky Widget license by allowing clinicians or researchers who have not been trained and certified on the Morisky Widget to administer, score, and code MMAS-8 tests.

119.    A valid contractual obligation was established by the execution of a

perpetual Morisky Widget license agreement between Defendant EINSTEIN and Plaintiff MMAS Research LLC which permitted the use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

120.    Defendant EINSTEIN breached its Morisky Widget license by not scoring and coding MMAS tests through the Morisky Widget.

121.    Defendant EINSTEIN breached its license by failing to submit all manuscripts that report MMAS-8 results to Plaintiff before they are submitted for publication.

122.    A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant OLAV and Plaintiff MMAS Research LLC which permitted the use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

123.    Defendant OLAV breached its license by scoring and coding MMAS-8 tests outside the Morisky Widget.

124.    Defendant OLAV breached its license by divulging trade secret MMAS-8 scoring and coding criteria in a publication without the Plaintiff's written permission.

125.    A valid contractual obligation was established by the execution of an MMAS-8 license agreement between Defendant YALE and Plaintiff MMAS Research LLC which permitted the use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

126.    Defendant YALE breached its MMAS-8 license by divulging trade secret MMAS-8 coding and scoring criteria in a publication without the Plaintiff's prior written permission.

127.    A valid contractual obligation was established by the execution of a CR2A settlement agreement between Plaintiff and Defendant MMAR LLC. Defendant MMAR breached the CR2A Section 2 #7 by licensing Defendant OLAV who already

had a perpetual Morisky Widget license.

128.   A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant MAASTRICHT and Plaintiff MMAS Research LLC which permitted the use of the Morisky Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

129.   Defendant MAASTRICHT breached its perpetual Morisky Widget license by divulging trade secret MMAS-8 coding and scoring criteria in a publication without the Plaintiff's prior written permission.

130.   As a result of these breaches, MMAS Research has suffered damages, including but not limited to, loss of revenue, reputational harm, and the unauthorized dissemination of proprietary information. Plaintiff seeks compensatory damages, injunctive relief to prevent further breaches, and any other relief deemed just and proper by the Court.

### SECOND CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 101, *ET SEQ.*
### (As to Defendants NOVARTIS, FEDERICO, EINSTEIN, OLAV, YALE, PANICO, MMAR, MAASTRICHT, PAVIA)

131.   MMAS Research realleges each allegation contained in the preceding paragraphs.

132.   At all times relevant hereto, MMAS Research was the owner of all copyright rights or rights to assert copyright claims for the Morisky Widget.

133.   MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and all other laws governing copyright.

134.   Defendants NOVARTIS, FEDERICO, EINSTEIN, OLAV, YALE MMAR LLC, MAASTRICHT and PANICO violated 17 U.S.C. §501, *et seq*.

135.   MMAS Research is informed and believes and thereon alleges that Defendants have, without authorization, infringed the Morisky Widget copyright by using, copying, counterfeiting, distributing, or otherwise exploiting the same contrary

to the limited-use licenses and settlement agreements.

136.    MMAS Research is informed and believes and thereon alleges that NOVARTIS, FEDERICO, EINSTEIN, OLAV, YALE, MMAR and PANICO have, without authorization, infringed the Morisky Widget copyright by exploiting the Morisky Widget MMAS-8 in the course of a publication.

137.    Defendant NOVARTIS willfully committed no fewer than 3000 infringements of the Morisky Widget copyright in the in the NOFRETETE, RIBANNA, and CARDIO studies.

138.    Defendants OLAV and MMAR LLC willfully committed no fewer than 1252 infringements of the Morisky Widget copyright in publication.

139.    Defendants FEDERICO, YALE, and EINSTEIN willfully committed no fewer than 200 infringements of the Morisky Widget copyright in publication.

140.    Defendants PANICO willfully committed no fewer than 90 infringements of the Morisky Widget copyright in publication.

141.    Defendants PAVIA willfully committed no fewer than 90 infringements of the Morisky Widget copyright in publication.

142.    Defendants MASSTRICHT willfully committed no fewer than 880 infringements of the Morisky Widget copyright in publication.

143.    Each act of infringement by the Defendants was committed with knowledge of the Plaintiff's copyright ownership and with the intent of deriving commercial gain and causing harm to MMAS Research, constituting willful infringement.

144.    As a result of the foregoing, Plaintiff has suffered harm in the form of lost revenue, diminished market position, and reputational damage, and seeks an award of statutory damages, actual damages, and any profits made by Defendants attributable to the infringement, as well as injunctive relief to prevent further infringement.

145.    Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per work infringed for Defendants' willful copyright infringement

pursuant to 17 U.S.C. § 504(c)(2), plus attorneys' fees and costs pursuant to 17 U.S.C. § 505.

146.   Plaintiff further seeks an award of attorneys' fees and costs incurred in pursuing this claim, as well as any other relief deemed just and proper by the Court.

## THIRD CLAIM FOR RELIEF
## TRADE SECRET MISAPPROPRIATION, DTSA
### (As to Defendants NOVARTIS, FEDERICO, EINSTEIN, OLAV, YALE, PANICO, MMAR, MAASTRICHT, PAVIA)

147.   MMAS Research realleges each allegation contained in the preceding paragraphs.

148.   Plaintiff MMAS Research possesses and vigorously asserts trade secret rights in the MMAS Research Widget Code, including its proprietary MMAS scoring and coding algorithms. These trade secrets are highly valuable intellectual property assets, representing years of research and development. They are not generally known to others in the industry and provide MMAS Research with a significant competitive advantage. MMAS Research has consistently implemented robust measures to maintain the secrecy of this information, including but not limited to strict confidentiality agreements, limited access protocols, and secure storage systems.

149.   Under the Defend Trade Secrets Act 18 U.S.C. § 1839(3) a trade secret consists of three elements: (1) information; (2) that is valuable because it is unknown to others; and (3) that the owner has attempted to keep it a secret.

150.   Under the Defend Trade Secrets Act, a plaintiff must prove: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020).

151.   MMAS Research does not permit licensees to disclose MMAS, scoring and coding, let alone the modification of the trade secret MMAS scoring and coding criteria. Yet, Defendants misappropriated trade secret MMAS-8 specific scoring and coding and shared it with third parties.

152.   The trade secrets include, but are not limited to, the specific scoring and

coding algorithms and test/translation editor algorithms of the MMAS Widget Code software designed to create MMAS condition and medication specific assessments in over 80 languages.

153.    Defendants NOVARTIS, MAASTRICHT, FEDERICO, EINSTEIN, OLAV, and MMAR were trained and certified by Plaintiff on the use of copyrighted trade secret Morisky Widget source code scoring and coding and test editor translation algorithms.

154.    Defendants MAASTRICHT FEDERICO, EINSTEIN, OLAV, YALE, PANICO, and MMAR, and PAVIA misappropriated MMAS Research's confidential, proprietary, and trade secret information by disclosing, without authorization, Plaintiff's proprietary MMAS Widget scoring and coding algorithms in research publications, presentations, and unauthorized translations, misappropriating the trade secrets therein as well as violating terms of the licenses granted by Plaintiff.

155.    This misappropriation of MMAS Research's confidential, proprietary, and trade secret information was intentional, knowing, willful, and malicious.

156.    As the direct and proximate result of Defendants' misconduct, MMAS Research has suffered and, if Defendants' conduct is not enjoined, will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because MMAS Research's remedy at law is inadequate, MMAS Research seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests. Plaintiff MMAS Research has been damaged by the foregoing and is entitled to an award of exemplary damages and attorney's fees.

157.    MMAS Research seeks all remedies available under the Defend Trade Secrets Act, including but not limited to monetary damages, exemplary damages for willful and malicious misappropriation, and an injunction against further misappropriation.

## FOURTH CLAIM FOR RELIEF
## INTENTIONAL INTEREFERENCE WITH CONTRACT RELATIONS
### (As to Defendant MMAR)

158.   MMAS Research realleges each allegation contained in the preceding paragraphs.

159.   At all times relevant hereto, MMAS Research was the owner of all rights to asset claims for the Morisky Widget.

160.   "California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract. 'It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract.'" *Redfearn v. Trader Joe's Co.* (2018) 20 Cal.App.5th 989, 997 [230 Cal.Rptr.3d 98].

161.   "[C]ases have pointed out that while the tort of inducing breach of contract requires proof of a breach, the cause of action for interference with contractual relations is distinct and requires only proof of interference." *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1129 [270 Cal.Rptr. 1, 791 P.2d 587] (internal citations omitted).

162.   "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587].

163.   "We conclude that specific intent is not a required element of the tort of interference with prospective economic advantage. While a plaintiff may satisfy the intent requirement by pleading specific intent, *i.e.*, that the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur

1   as a result of its action." *Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th

2   1134, 1154 [131 CACI No. 2201 ECONOMIC INTERFERENCE 1318].

3       164.   As established above, MMAS Research has a valid global and perpetual

4   Morisky Widget license contracts with Defendants NOVARTIS, OLAV, EINSTEIN

5   and FEDERICO.

6       165.   Defendants MMAR knew of Defendants NOVARTIS, OLAV, EINSTEIN

7   and FEDERICO's perpetual Morisky Widget contracts by way of CR2A or other means

8   and tortiously interfered with these contracts in order to terminate the Defendants

9   Morisky Widget license and replace them with MMAR MMAS-8 licenses.

10      166.   As evidenced by the allegations, MMAR intentionally interfered with

11  Plaintiff's ability to perform the agreed terms of the CR2A and to execute Defendant's

12  Morisky Widget license provided by the CR2A. This interference has resulted in

13  MMAS Research losing expected revenue and suffering damage to its business

14  reputation, scientific standing and contractual relationships.

15      167.   MMAS Research claims Defendant MMAR, intentionally and tortiously

16  interfered and terminated Defendant Novartis perpetual Morisky Widget license

17  contract.

18      168.   Trubow and MMAS Research have lost expected revenue resulting from

19  the intentional tortious actions of Defendants in a sum to be proven at trial, but in a sum

20  no less than $10,000,000.

21      169.   Such interference has not only been entirely their obligations but has been

22  directed to cause harm to Plaintiff. These tortious actions have included: inducing a

23  third party to breach a contract and terminate their Morisky Widget license, spreading

24  false information about the ownership of the Morisky Widget copyright, interfering

25  with the use of the Morisky Widget in clinics and hospitals worldwide that

26  compromised the treatment for seriously ill patients with chronic and infectious

27  diseases, interfering with the use of the Morisky Widget in international clinical trials

28  for seriously ill patients with chronic and infectious diseases, threatening lawsuits to

existing Morisky Widget licensees if they continue to use the Widget. postings on www.moriskyscale.com that delivered false information on Morisky Widget licenses, and on the operating status and ownership of Morisky Widget.

170.   Defendant MMAR, LLC tortiously interfered with and wrongfully terminated perpetual Morisky Widget licenses held by MMAS Research, LLC, as listed in the CR2A Agreement. These licenses were held by Defendants NOVARTIS, OLAV, EINSTEIN and FEDERICO.

171.   Plaintiff seeks compensatory damages for economic harm, punitive damages for malicious conduct, and injunctive relief to prevent further interference.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court Enters Judgment in Plaintiff's favor and against Defendants as follows:

A. For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff MMAS Research's copyright in the Morisky Widget, in accordance with proof at trial;

B. For statutory damages for copyright infringement and/or willful copyright infringement by Defendants;

C. For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from: using the Widget Tests or the Morisky Widget copyrighted work until a license is obtained, including the maintenance on websites, posted on the Internet, or in any publication, articles, and reports described herein, or any such articles, publication, and reports in the future that use or reference the Widget Tests, MMAS-8, or the Morisky Widget;

D. Order that Defendants file with this Court and serve upon Plaintiffs within thirty

(30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply;

E. For costs of suit incurred;

F. For attorneys' fees;

G. For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

H. For such other and further relief, the Court deems just and proper.


Dated: August 11, 2025

Respectfully submitted,

**HANKIN PATENT LAW, APC**
*/Marc E. Hankin/*
Marc E. Hankin, Esq.
Attorneys for Plaintiff,
MMAS RESEARCH LLC


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all claims and issues so triable.


Dated: August 11, 2025

Respectfully submitted,

**HANKIN PATENT LAW, APC**
*/Marc E. Hankin/*
Marc E. Hankin, Esq.
Attorneys for Plaintiff,
MMAS RESEARCH LLC